# EXHIBIT "4"

**Execution Version**

# GUARANTY

THIS GUARANTY, dated as of March 8, 2022, is made and given by DANIEL METZLER, an individual residing in the Commonwealth of Pennsylvania, and JOHN WOLFINGTON, an individual residing in the Commonwealth of Pennsylvania (together with DANIEL METZLER, the "Guarantors" and each a "Guarantor"), in favor of NEXII BUILDING SOLUTIONS INC., a company organized under the laws of British Columbia, Canada (the "Lessor").

## RECITALS

A.      The Lessor has extended credit accommodations to NexUS 1, LLC, a Delaware limited liability company (the "Lessee"), pursuant to that certain Master Lease Agreement dated as of the date hereof by and between the Lessor and the Lessee (the "Master Lease Agreement").

B.      In connection with those credit accommodations the Lessor has required that this Guaranty be executed and delivered by the Guarantors.

C.      Each Guarantor is an indirect owner of equity interests issued by the Lessee.

D.      Each Guarantor expects to derive benefits from the extension of credit accommodations to the Lessee by the Lessor and finds it advantageous, desirable and in its best interests to execute and deliver this Guaranty to the Lessor.

NOW, THEREFORE, In consideration of the credit accommodations to be extended to the Lessee and for other good and valuable consideration, each Guarantor, hereby covenants and agrees with the Lessor as follows:

Section 1.      Defined Terms.  As used in this Guaranty, the following terms shall have the meaning indicated:

"Guarantor" shall have the meaning indicated in the opening paragraph hereof.

"Lessee" shall have the meaning indicated in Recital A.

"Lessor" shall have the meaning indicated in the opening paragraph hereof.

"Master Lease Agreement" shall have the meaning indicated in the opening paragraph hereof.

"Obligations" shall mean all principal of, interest on, rent, fees and all other obligations under that certain Master Lease Agreement and any extension, renewal or replacement thereof, in all cases whether due or to become due, and whether now existing or hereafter arising or incurred.

4855-3648-9231\6

"Person" shall mean any individual, corporation, partnership, limited partnership, limited liability company, joint venture, firm, association, trust, unincorporated organization, government or governmental agency or political subdivision or any other entity, whether acting in an individual, fiduciary or other capacity.

Section 2.      The Guaranty.  Subject always to Sections 3 and 4, each Guarantor, jointly and severally, hereby absolutely and unconditionally guarantees to the Lessor the payment when due (whether at a stated maturity or earlier by reason of acceleration or otherwise) and performance of the Obligations.

Section 3.      Limitation as to Amount.  Notwithstanding any other provision hereof, the obligation of the Guarantors on this Guaranty is limited to the sum of $400,000 plus interest on any amount owing hereunder from the date demanded by the Lessor until paid at a floating rate equal to the rate then applicable at any time to the obligations of the Lessee under the Master Lease Agreement (without giving effect to the effect of any insolvency or bankruptcy laws thereon, and provided such sum is not paid within five (5) days of Lessor's written demand) plus the Lessor's reasonable costs of collection from the Guarantors.  Each Guarantor acknowledges and agrees that Obligations may be created and continued in any amount, without affecting or impairing the liability of such Guarantor hereunder, and the Lessor may pay (or allow for the payment of) Obligations out of any sums received by or available to the Lessor on account of Obligations from the Lessee or any other person or entity (except the Guarantors), from the properties of the Lessee or such other Persons, out of collateral security or from any other source, and such payment (or allowance) shall not reduce, affect or impair the liability of the Guarantors hereunder.  The liability of the Guarantors shall be a continuing liability and shall not be affected by (nor shall anything herein contained be deemed a limitation upon) the amount of credit which may be extended to the Lessee, the number of transactions with the Lessee, repayments by the Lessee, or the allocation by the Lessor of repayments by the Lessee, it being the understanding of the Guarantors that the Guarantors' liability shall continue hereunder so long as there are any Obligations outstanding (but this Guaranty shall expire once the Guarantors collectively have repaid the sum of $400,000 plus interest and costs of collection described above).  Any payment made by the Guarantors hereunder shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lessor, advising the Lessor that such payment is made under this Guaranty for such purpose.

Section 4.      Limitation; Insolvency Laws.  As used in this Section: (a) the term "Applicable Insolvency Laws" means the laws of the United States of America or of any State, province, nation or other governmental unit relating to bankruptcy, reorganization, arrangement, adjustment of debts, relief of debtors, dissolution, insolvency, fraudulent transfers or conveyances or other similar laws (including, without limitation, 11 U. S. C. §547, §548, §550 and other "avoidance" provisions of Title 11 of the United States Code) as applicable in any proceeding in which the validity and/or enforceability of this Guaranty or any Specified Lien is in issue; and (b) "Specified Lien" means any security interest, mortgage, lien or encumbrance securing this Guaranty, in whole or in part.  Notwithstanding any other provision of this Guaranty, if, in any proceeding, a court of competent jurisdiction determines that this Guaranty or any Specified Lien would, but for the operation of this Section, be subject to avoidance and/or recovery or be unenforceable by reason of Applicable Insolvency Laws, this Guaranty and each such Specified Lien shall be valid and enforceable only to the maximum extent that would not

2

cause this Guaranty or such Specified Lien to be subject to avoidance, recovery or unenforceability.  To the extent that any payment to, or realization by, the Lessor on the guaranteed Obligations exceeds the limitations of this Section and is otherwise subject to avoidance and recovery in any such proceeding, the amount subject to avoidance shall in all events be limited to the amount by which such actual payment or realization exceeds such limitation, and this Guaranty as limited shall in all events remain in full force and effect and be fully enforceable against the Guarantors.   This Section is intended solely to reserve the rights of the Lessor hereunder against the Guarantors in such proceeding to the maximum extent permitted by Applicable Insolvency Laws and neither the Guarantors, the Lessee, any other guarantor of the Obligations nor any person or entity shall have any right, claim or defense under this Section that would not otherwise be available under Applicable Insolvency Laws in such proceeding.  In any circumstance in which both Section 3 and this Section 4 might be applicable, the liability of the Guarantors shall be the lesser of the amounts determined under Sections 3 or 4.

Section 5.    Continuing Guaranty.  This Guaranty is an absolute, unconditional and continuing guaranty of payment and performance of the Obligations, and the obligations of the Guarantors hereunder shall not be released, in whole or in part, by any action or thing which might, but for this provision of this Guaranty, be deemed a legal or equitable discharge of a surety or guarantor, other than irrevocable payment and performance in full of the Obligations (up to the limited amount provided above).  No notice of the Obligations to which this Guaranty may apply, or of any renewal or extension thereof need be given to the Guarantors and none of the foregoing acts shall release the Guarantors from liability hereunder.  Each Guarantor hereby expressly waives (a) demand of payment, presentment, protest, notice of dishonor, nonpayment or nonperformance on any and all forms of the Obligations; (b) notice of acceptance of this Guaranty and notice of any liability to which it may apply; (c) all other notices and demands of any kind and description relating to the Obligations now or hereafter provided for by any agreement, statute, law, rule or regulation; and (d) any and all defenses of the Lessee pertaining to the Obligations except for the defense of discharge by payment.  The Guarantors shall not be exonerated with respect to the Guarantors' liabilities under this Guaranty by any act or thing except irrevocable payment and performance of the Obligations (up to the amount guaranteed by the Guarantors hereunder), it being the purpose and intent of this Guaranty that the Obligations constitute the direct and primary obligations of the Guarantors and that the covenants, agreements and all obligations of the Guarantors hereunder be absolute, unconditional and irrevocable.  The Guarantors shall be and remain liable for any deficiency remaining after foreclosure of any mortgage, deed of trust or security agreement securing all or any part of the Obligations, whether or not the liability of the Lessee or any other Person for such deficiency is discharged pursuant to statute, judicial decision or otherwise.  The acceptance of this Guaranty by the Lessor is not intended and does not release any liability previously existing of any guarantor or surety of any indebtedness of the Lessee to the Lessor.

Section 6.    Other Transactions.  The Lessor is expressly authorized (a) to exchange, surrender or release with or without consideration any or all collateral and security which may at any time be placed with it by the Lessee or by any other Person, or to forward or deliver any or all such collateral and security directly to the Lessee for collection and remittance or for credit, or to collect the same in any other manner without notice to the Guarantors and (b) to amend, modify, extend or supplement any note or other instrument evidencing the Obligations or any

3

part thereof and any other agreement with respect to the Obligations, waive compliance by the Lessee or any other Person with the respective terms thereof and settle or compromise any of the Obligations without notice to the Guarantors and without in any manner affecting the absolute liabilities of the Guarantors hereunder.  No invalidity, irregularity or unenforceability of all or any part of the Obligations or of any security therefor or other recourse with respect thereto shall affect, impair or be a defense to this Guaranty. The liabilities of the Guarantors hereunder shall not be affected or impaired by any failure, delay, neglect or omission on the part of the Lessor to realize upon any of the Obligations of the Lessee to the Lessor, or upon any collateral or security for any or all of the  Obligations, nor by the taking by the Lessor of (or the failure to take) any other guaranty or guaranties to secure the Obligations, nor by the taking by the Lessor of (or the failure to take or the failure to perfect its security interest in or other lien on) collateral or security of any kind.  No act or omission of the Lessor, whether or not such action or failure to act varies or increases the risk of, or affects the rights or remedies of the Guarantors shall affect or impair the obligations of the Guarantors hereunder.  Each Guarantor acknowledges that this Guaranty is in effect and binding without reference to whether this Guaranty is signed by any other Person or Persons, that possession of this Guaranty by the Lessor shall be conclusive evidence of due delivery hereof by the Guarantors and that this Guaranty shall continue in full force and effect, both as to the Obligations then existing and/or thereafter created, notwithstanding the release of or extension of time to any other guarantor of the Obligations or any part thereof.

Section 7.      Actions Not Required.  Each Guarantor hereby waives any and all right to cause a marshalling of the assets of the Lessee or any other action by any court or other governmental body with respect thereto or to cause the Lessor to proceed against any security for the Obligations or any other recourse which the Lessor may have with respect thereto and further waives any and all requirements that the Lessor institute any action or proceeding at law or in equity, or obtain any judgment, against the Lessee or any other Person, or with respect to any collateral security for the Obligations, as a condition precedent to making demand on or bringing an action or obtaining and/or enforcing a judgment against, the Guarantors upon this Guaranty.  Each Guarantor further acknowledges that time is of the essence with respect to the Guarantors' obligations under this Guaranty.  Any remedy or right hereby granted which shall be found to be unenforceable as to any Person or under any circumstance, for any reason, shall in no way limit or prevent the enforcement of such remedy or right as to any other Person or circumstance, nor shall such unenforceability limit or prevent enforcement of any other remedy or right hereby granted.

Section 8.      No Subrogation.  Notwithstanding any payment or payments made by the Guarantors hereunder, each Guarantor waives all rights of subrogation to any of the rights of the Lessor against the Lessee or any other Person liable for payment of any of the Obligations or any collateral security or guaranty or right of offset held by the Lessor for the payment of the Obligations, and each Guarantor waives such Guarantor's rights to seek any recourse to or contribution or reimbursement from the Lessee or any other Person liable for payment of any of the Obligations in respect of payments made by any Guarantor hereunder until after such time as all obligations between the Lessor and the Lessee have terminated, including all obligations under the Master Lease Agreement, any manufacturing agreement, any loans or notes between the Lessor and Lessee, and any other financial support arrangement (whether contingent or non-contingent) between Lessor and Lessee.

4

Section 9.    Application of Payments.  Any and all payments upon the Obligations made by the Guarantors or by any other Person, and/or the proceeds of any or all collateral or security for any of the Obligations, may be applied by the Lessor on such items of the Obligations as the Lessor may elect.

Section 10.    Recovery of Payment.  If any payment received by the Lessor and applied to the Obligations is subsequently set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of the Lessee or any other obligor), the  Obligations to which such payment was applied shall for the purposes of this Guaranty be deemed to have continued in existence, notwithstanding such application, and this Guaranty shall be enforceable as to such Obligations as fully as if such application had never been made.  References in this Guaranty to amounts "irrevocably paid" or to "irrevocable payment" refer to payments that cannot be set aside, recovered, rescinded or required to be returned for any reason.

Section 11.    Lessee's Financial Condition.  Each Guarantor is familiar with the financial condition of the Lessee, and each Guarantor has executed and delivered this Guaranty based on such Guarantor's own judgment and not in reliance upon any statement or representation of the Lessor.  The Lessor shall have no obligation to provide the Guarantors with any advice whatsoever or to inform the Guarantors at any time of the Lessor's actions, evaluations or conclusions on the financial condition or any other matter concerning the Lessee.

Section 12.    Remedies.  All remedies afforded to the Lessor by reason of this Guaranty are separate and cumulative remedies and it is agreed that no one of such remedies, whether or not exercised by the Lessor, shall be deemed to be in exclusion of any of the other remedies available to the Lessor and no one of such remedies shall in any way limit or prejudice any other legal or equitable remedy which the Lessor may have hereunder and with respect to the Obligations.  Mere delay or failure to act shall not preclude the exercise or enforcement of any rights and remedies available to the Lessor.

Section 13.    Bankruptcy of the Lessee.  Each Guarantor expressly agrees that the liabilities and obligations of the Guarantors under this Guaranty shall not in any way be impaired or otherwise affected by the institution by or against the Lessee or any other Person of any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or any other similar proceedings for relief under any bankruptcy law or similar law for the relief of debtors and that any discharge of any of the Obligations pursuant to any such bankruptcy or similar law or other law shall not diminish, discharge or otherwise affect in any way the obligations of the Guarantors under this Guaranty, and that upon the institution of any of the above actions, such obligations shall be enforceable against the Guarantors.

Section 14.    Costs and Expenses.  The Guarantors will pay or reimburse the Lessor on demand for all out-of-pocket expenses (including in each case all reasonable fees and expenses of counsel) reasonably incurred by the Lessor arising out of or in connection with the enforcement of this Guaranty against the Guarantors or arising out of or in connection with any failure of the Guarantors to fully and timely perform the obligations of the Guarantor hereunder.

5

Section 15.    Waivers and Amendments.  This Guaranty can be waived, modified, amended, terminated or discharged only explicitly in a writing signed by the Lessor.  A waiver so signed shall be effective only in the specific instance and for the specific purpose given.

Section 16.    Notices.  Any notice or other communication to any party in connection with this Guaranty shall be in writing and shall be sent by manual delivery, telegram, telex, facsimile transmission, overnight courier or United States mail (postage prepaid) addressed to such party at the address specified on the signature page hereof, or at such other address as such party shall have specified to the other party hereto in writing.  All periods of notice shall be measured from the date of delivery thereof if manually delivered, from the date of sending thereof if sent by telegram, telex or facsimile transmission, from the first business day after the date of sending if sent by overnight courier, or from four days after the date of mailing if mailed.  Copies of all notices to the Guarantors shall be provided to Guarantors' counsel, Silverang, Rosenzweig & Haltzman, LLC, 900 East Eighth Avenue, Suite 300, King of Prussia, PA 19406, Attn: Joshua E. Beldner, Esq., jbeldner@sanddlawyers.com (email shall suffice for this purpose).

Section 17.    Guarantor Acknowledgements.  Each Guarantor hereby acknowledges that (a) counsel has advised such Guarantor in the negotiation, execution and delivery of this Guaranty, (b) the Lessor has no fiduciary relationship to such Guarantor the relationship being solely that of debtor and creditor, and (c) no joint venture exists between such Guarantor and the Lessor.

Section 18.    Continuing Guaranty; Release of Guaranty.  This Guaranty shall (a) remain in full force and effect until irrevocable payment in full of the Obligations and the expiration of the obligations, if any, of the Lessor to extend credit accommodations to the Lessee, (b) be binding upon the Guarantors, their heirs, representatives and assigns and (c) inure to the benefit of, and be enforceable by, the Lessor and its successors, transferees, and assigns. Notwithstanding the foregoing in this Section 18, (a) this Guaranty shall be released by the Lessor upon the payment by the prepayment by Lessee to Lessor under the Master Lease Agreement of an aggregate amount of $400,000 in excess of the amounts at any time otherwise due and payable under the Master Lease Agreement; and (b) this Guaranty shall be released by Lessor upon the payment of a total of $400,000 collectively by the Guarantor (plus interest and costs of collection, as provided above). Upon the occurrence of any of the foregoing events, Lessor, at either Guarantor's request, shall execute a written release of this Guaranty and deliver the same to the Guarantors (such document to be in form reasonably acceptable to the Guarantors).

Section 19.    Reaffirmation.  Each Guarantor agrees that when so requested by the Lessor from time to time he will promptly execute and deliver to the Lessor a written reaffirmation of this Guaranty in such form as the Lessor may require.

Section 20.    **Governing Law and Construction.  THE VALIDITY, CONSTRUCTION AND ENFORCEABILITY OF THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF PENNSYLVANIA, WITHOUT GIVING EFFECT TO CONFLICT OF LAWS PRINCIPLES THEREOF.**  Whenever possible, each provision of this Guaranty and any other statement, instrument or transaction contemplated hereby or relating hereto shall be interpreted in such manner as to be effective and

6

valid under such applicable law, but, if any provision of this Guaranty or any other statement, instrument or transaction contemplated hereby or relating hereto shall be held to be prohibited or invalid under such applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty or  any other statement, instrument or transaction contemplated hereby or relating hereto.

Section 21.      **Consent to Jurisdiction.  THIS GUARANTY SHALL BE ENFORCED IN ANY FEDERAL COURT OR PENNSYLVANIA STATE COURT SITTING IN PENNSYLVANIA, PENNSYLVANIA; AND EACH GUARANTOR CONSENTS TO THE JURISDICTION AND VENUE OF ANY SUCH COURT AND WAIVES ANY ARGUMENT THAT VENUE IN SUCH FORUMS IS NOT CONVENIENT.  IN THE EVENT A GUARANTOR COMMENCES ANY ACTION IN ANOTHER JURISDICTION OR VENUE UNDER ANY TORT OR CONTRACT THEORY ARISING DIRECTLY OR INDIRECTLY FROM THE RELATIONSHIP CREATED BY THIS GUARANTY, THE LESSOR AT ITS OPTION SHALL BE ENTITLED TO HAVE THE CASE TRANSFERRED TO ONE OF THE JURISDICTIONS AND VENUES ABOVE-DESCRIBED, OR IF SUCH TRANSFER CANNOT BE ACCOMPLISHED UNDER APPLICABLE LAW, TO HAVE SUCH CASE DISMISSED WITHOUT PREJUDICE.**

Section 22.      **Waiver of Jury Trial.  EACH GUARANTOR AND THE LESSOR, BY ITS ACCEPTANCE OF THIS GUARANTY, IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY.**

Section 23.      Counterparts.  This Guaranty may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.

Section 24.      General.  All representations and warranties contained in this Guaranty or in any other agreement between any Guarantor and the Lessor shall survive the execution, delivery and performance of this Guaranty and the creation and payment of the Obligations. Captions in this Guaranty are for reference and convenience only and shall not affect the interpretation or meaning of any provision of this Guaranty.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Guarantors have executed this Guaranty as of the date first above written.

GUARANTOR:

_____
Daniel Metzler

Address:
101 Carleton Avenue
Hazleton, PA 18201
USA

GUARANTOR:

_____
John Wolfington

Address:
101 Carleton Avenue
Hazleton, PA 18201
USA

Address for the Lessor:

Nexii Building Solutions Inc.
200 – 1455 West Georgia St.
Vancouver, BC, V6G 2T3
CANADA

[Signature Page to Guaranty]